**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LOPER BRIGHT ENTERPRISES, INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Civil Action No. 20-466 |
| WILBUR L. ROSS, JR., *et al.*, | ) ) ) |
| Defendants. | ) ) |

**COMPLAINT EXHIBIT 6**

# CAUSE of ACTION
## INSTITUTE

Pursuing Freedom and Opportunity through Justice and Accountability

February 12, 2019

**VIA CERTIFIED MAIL**

The Honorable Wilbur L. Ross, Jr.
Secretary of Commerce
U.S. Department of Commerce
1401 Constitution Avenue, N.W.
Washington, D.C. 20230

Re:   Secretarial Approval of the New England Industry-Funded Monitoring Omnibus Amendment

Dear Secretary Ross:

I write on behalf of Cause of Action Institute ("CoA Institute"), a 501(c)(3) nonpartisan government-oversight organization that uses investigative, legal, and communications tools to educate the public about how government accountability, transparency, and the rule of law protect individual liberty and economic opportunity.[1] Among other things, CoA Institute monitors the overregulation of our nation's fisheries and has represented clients in challenging past efforts to compel the regulated industry to pay for discretionary supplemental at-sea monitoring services.[2]

It recently came to our attention that your office has "approved" the New England Industry-Funded Monitoring Omnibus Amendment ("Omnibus Amendment"), which includes a number of controversial measures sponsored by the New England Fishery Management Council ("NEFMC").[3] Specifically, the Omnibus Amendment would introduce provisions into all New England fishery management plans to allow for standardized implementation of mandatory industry-funded monitoring via future plan-specific amendment. It also contains measures to create a new industry-funded monitoring program for the Atlantic herring fishery.

The fact of your approval of the Omnibus Amendment has not been widely disseminated. The Greater Atlantic Regional Fisheries Office ("GARFO") Administrator, Michael Pentony, informed the NEFMC of the development by letter, dated December 18, 2018.[4] But that letter has not been publicly circulated by fishery authorities or the Council. It cannot be found on the NEFMC or GARFO websites; it has not been posted any fishery bulletin boards; and, most importantly, neither the letter nor any other form of notice of secretarial approval has been published in the *Federal Register*. This failure of transparency confirms many of the suspicions that stakeholders have about the heavy-handed and prejudicial management of New England fisheries.

---

[1] *About Us*, COA INST., https://causeofaction.org/about (last visited Feb. 12, 2019).
[2] *See generally Free the Fisherhmen*, COA INST., https://coainst.org/2Dp200f (last visited Feb. 12, 2019).
[3] *See Government Officials Ignore Public Comment, Create New Financial Burden on Fishermen*, COA INST. (Jan. 8, 2019), https://coainst.org/2SIAxeN.
[4] Letter from Michael Pentony, Reg'l Adm'r, Greater Atl. Reg'l Fisheries Office, to Dr. John Quinn, Chairman, New Eng. Fishery Mgm't Council (Dec. 18, 2018) (attached as Exhibit 1), *available at* https://coainst.org/2DgBF3W.

---

1875 EYE STREET, NW • SUITE 800 • WASHINGTON, DC 20006 • 202.499.4232 • WWW.CAUSEofACTION.ORG

A 501(C)(3) NONPROFIT CORPORATION

The Hon. Wilbur L. Ross, Jr.
Feb. 12, 2019
Page 2

The secret and silent approval of the Omnibus Amendment is particularly alarming considering the irregularities that have plagued the ongoing process of drafting, proposing, and implementing its measures. In September 2018, the National Marine Fisheries Service ("NMFS") published a notice of availability for the Omnibus Amendment and solicited public comment on whether it should be approved.[5] CoA Institute was one of several commenters that voiced its opposition, pointing out serious issues with the lack of statutory authorization for industry funding and broader inconsistency with the Magnuson-Stevens Act's ("MSA") National Standards.[6] Before any approval decision was announced, NMFS then oddly proposed implementing regulations at the beginning of November 2018.[7] CoA Institute also filed a public comment opposing that rulemaking.[8]

As Secretary of Commerce, you were responsible for reviewing the Omnibus Amendment for compliance with applicable law and, in doing so, you were obliged to consider "the information, views, and comments received from interested persons."[9] CoA Institute raised several valid and pressing concerns about the lack of statutory authorization for industry-funded monitoring and the devastating economic consequences that are expected from its implementation. It is unclear whether careful review of these issues was undertaken because no reasoned responses have been provided to the NEFMC, NMFS, or the public. Given the publication of a notice of availability, and the solicitation of public comments, secretarial approval should have been similarly published in the *Federal Register*, along with these responses, regardless of whether it was statutorily required.[10]

The available facts strongly suggest that the NEFMC and NMFS prejudged the legality of the Omnibus Amendment and intend to force it through regardless of the public outcry, the clear (and unaddressed) legal infirmities, and the negative impact on the long-term viability of the commercial fishing fleet. It is unfortunate that the Department of Commerce was unable or unwilling to provide a check on this determined effort to overregulate a heritage industry out of existence.

I respectfully request that you publicly confirm your approval the Omnibus Amendment and publish responses to the issues raised during the initial comment period. I further request that you disapprove the implementing regulations for the Omnibus Amendment that have been transmitted by the NEFMC for review under Section 1854(b) of the MSA.[11] If you wish to discuss this further, please do not hesitate to contact me at ryan.mulvey@causeofaction.org or (202) 499-4232.

Sincerely,

*Ryan P. Mulvey*

RYAN P. MULVEY
COUNSEL

---

[5] Dep't of Commerce, Nat'l Ocean & Atmospheric Admin., Industry-Funded Monitoring Request for Comments, 83 Fed. Reg. 47,326 (Sept. 19, 2018).
[6] Comment of CoA Inst. on 83 Fed. Reg. 47,326 (Nov. 19, 2018), *available at* https://coainst.org/2zWMBkW.
[7] Dep't of Commerce, Nat'l Ocean & Atmospheric Admin., Industry-Funded Monitoring Request for Comments, 83 Fed. Reg. 55,665 (Nov. 7, 2018).
[8] Comment of CoA Inst. on 83 Fed. Reg. 55,665 (Dec. 24, 2018), *available at* https://coainst.org/2FiBiHt.
[9] 16 U.S.C. § 1854(a)(1)–(2).
[10] *See id.* § 1854(a)(3).
[11] *See id.* § 1854(b)(1).

The Hon. Wilbur L. Ross, Jr.
Feb. 12, 2019
Page 3

Encl.:

Letter from Michael Pentony to the New Eng. Fishery Mgm't Council (Dec. 18, 2018)

CC:

The Honorable Peggy E. Gustafson, Inspector General
U.S. Department of Commerce

The Honorable Timothy C. Gallaudet, Under Secretary of Commerce for Oceans and Atmosphere
Acting Administrator of the National Oceanic and Atmospheric Administration
U.S. Department of Commerce

Mr. Michael Pentony, Regional Administrator
Greater Atlantic Regional Fisheries Office
National Marine Fisheries Service

Dr. John F. Quinn, Chairman
New England Fishery Management Council

Mr. Tom Nies, Executive Director
New England Fishery Management Council

# EXHIBIT 1



**UNITED STATES DEPARTMENT OF COMMERCE**
**National Oceanic and Atmospheric Administration**
NATIONAL MARINE FISHERIES SERVICE
GREATER ATLANTIC REGIONAL FISHERIES OFFICE
55 Great Republic Drive
Gloucester, MA 01930-2276

DEC 1 8 2018

Dr. John Quinn, Chairman
New England Fishery Management Council
50 Water Street
Newburyport, MA 01950

Dear John:

On behalf of the Secretary of Commerce, we approved the New England Industry-Funded Monitoring Omnibus Amendment, including all the management measures recommended by the Council in this amendment.

This amendment establishes a process to standardize future industry-funded monitoring programs for Council fishery management plans (FMPs) and establishes industry-funded monitoring in the Atlantic herring fishery.

*Omnibus Measures*

The omnibus measures amend all Council FMPs to standardize the development and administration of future industry-funded monitoring programs.

The omnibus measures establish:
- A process for FMP-specific industry-funded monitoring to be implemented via amendment and revised via framework adjustment;
- Standard cost responsibilities for us and the fishing industry;
- Standard administrative requirements for industry-funded observers/monitors and monitoring service providers;
- A process to prioritize monitoring coverage that may be provided by available Federal funding across FMPs for new industry-funded monitoring programs; and
- A process for FMP-specific monitoring set-aside programs to be implemented via a future framework adjustment action.

Standard cost responsibilities and administrative requirements would apply to the existing industry-funded monitoring programs in the Northeast Multispecies and Atlantic Sea Scallop FMPs, but the other omnibus measures would not apply to these existing programs. The Council may incorporate these existing industry-funded monitoring programs into the process to prioritize industry-funded monitoring programs for available Federal funding in a future action. Future industry-funded monitoring programs in the Multispecies and Scallop FMPs would either expand the existing programs or develop new programs consistent with the omnibus measures.



*Atlantic Herring Measures*

The herring measures establish an industry-funded monitoring program in the herring fishery. Increased monitoring in the herring fishery is designed to address the following goals: 1) Accurate estimates of catch (retained and discarded); 2) accurate catch estimates for incidental species with catch caps (haddock and river herring/shad); and 3) affordable monitoring for the herring fishery. To achieve these goals, the measures require a 50-percent coverage target for at-sea monitoring coverage aboard vessels issued an All Areas (Category A) or Areas 2/3 (Category B) Limited Access Herring Permit. Approximately 40 vessels have Category A or B herring permits, but those vessels typically catch over 95 percent of the total herring harvest.

As recommended by the Council, the 50-percent coverage target includes a combination of Standardized Bycatch Reporting Methodology (SBRM) and industry-funded monitoring coverage. Industry participants would pay for any additional monitoring coverage above SBRM to meet the 50-percent coverage target. Coverage requirements may be waived on a trip-by-trip basis if monitoring coverage is unavailable. Trips that land less than 50 mt of herring and vessels carrying no fish on pair trawling trips would be exempt from the amendment's coverage requirements.

During 2016 and 2017, we conducted an electronic monitoring project aboard herring vessels using midwater trawl gear. The purpose of the project was to evaluate the feasibility of using electronic monitoring to verify catch retention and track discarded catch. In April 2018, the Council reviewed results from the project and approved electronic monitoring, in combination with portside sampling, as a monitoring option for midwater trawl vessels, instead of at-sea monitoring, to meet the 50-percent industry-funded monitoring coverage target. The Council did not recommend requiring electronic monitoring and portside sampling as part of this action; instead it recommended we use an exempted fishing permit (EFP) to further evaluate how to best permanently administer an electronic monitoring and portside sampling program. Additionally, the EFP would provide us with the flexibility to troubleshoot and react to problems, thus helping make the monitoring program more robust. Using the results of the EFP, the Council may consider establishing electronic monitoring and portside sampling requirements via a framework adjustment when it revisits industry-funded monitoring requirements two years after implementation.

The herring measures maintain the existing requirement that midwater trawl vessels fishing in the Groundfish Closed Areas must carry an observer, but would allow herring vessels to purchase observer coverage to access these closed areas. Herring midwater trawl vessels are currently only able to fish in the Groundfish Closed Areas if they are randomly selected to carry an observer to meet SBRM requirements.

As you are aware, industry-funded monitoring coverage in the herring fishery is contingent upon the availability of Federal funds to support our cost responsibilities. Without additional funding, we would be unable to administer industry-funded monitoring for the herring fishery in a given year. We were awarded funding to administer electronic monitoring for the herring fishery in 2020, but do not currently have funding to implement and administer the at-sea monitoring and portside sampling components. We continue working toward securing funding to administer

industry-funded monitoring in the herring fishery, but the earliest we could implement industry-funded monitoring in the herring fishery is 2020.

We appreciate the Council's and Council staff's efforts to develop this amendment and ongoing efforts to improve monitoring in New England fisheries. Please contact me if you have any questions.

Sincerely,

Michael Pentony
Regional Administrator

Cc: Thomas A. Nies, Executive Director, New England Fishery Management Council
Michael Luisi, Chairman, Mid-Atlantic Fishery Management Council
Dr. Christopher M. Moore, Executive Director, Mid-Atlantic Fishery Management Council
Robert E. Beal, Executive Director, Atlantic States Marine Fisheries Commission