**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LOPER BRIGHT ENTERPRISES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No: 1:20-cv-00466-EGS |
| ) | |
| WILBUR L. ROSS, in his official capacity as ) | |
| Secretary of the Department of Commerce, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFFS' EXTRA-RECORD DECLARATION (ECF 22-1)**

**TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT .................................................................................................................... 2

   A.  Plaintiffs Did Not Follow Proper Procedures In Presenting Mr. Kaelin's Declaration With Their Merits Briefing. ................................................................... 2

   B.  None Of The Exceptions To The Rule Against Extra-Record Evidence Apply ................. 3

   C.  Plaintiffs Concede That VMS Costs Are Already Part Of The Administrative Record ...... 8

   D.  Plaintiffs' Brief Undeniably Cites And Relies On Mr. Kaelin's Declaration .................... 10

   E.  Mr. Kaelin's Declaration Improperly Opines On Economic Feasibility. ......................... 11

III. CONCLUSION ............................................................................................................... 13

## **TABLE OF AUTHORITIES**

**CASES** **PAGE**

*Am. Wildlands v. Kempthorne*,
  530 F.3d 991 (D.C. Cir. 2008) ................................................................................ 3

*Arizona v. California*,
  460 U.S. 605 (1983) ............................................................................................. 12

*Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*,
  667 F. Supp. 2d 111 (D.D.C. 2009) ....................................................................... 2

*City of Dania Beach v. FAA*,
  628 F.3d 581 (D.C. Cir. 2010) ...................................................................... 3, 6, 7

*Dist. Hosp. Partners v. Burwell*,
  786 F.3d 46 (D.C. Cir. 2015) ................................................................................. 9

*Level the Playing Field v. Federal Election Comm'n*,
  381 F. Supp. 3d 78 (D.D.C. 2019) ......................................................................... 9

*Oceana v. Evans*,
  384 F. Supp. 2d 203 (D.D.C. 2005) ..................................................................... 12

*Oceana v. Locke*,
  674 F. Supp. 2d 39 (D.D.C. 2009) ......................................................................... 6

*Oceana v. Pritzker*,
  126 F. Supp. 3d 110 (D.D.C. 2015) ..................................................................... 13

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
  448 F. Supp. 2d 1 (D.D.C. 2006) ....................................................................... 2, 9

*Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*,
  940 F.2d 685 (D.C. Cir. 1991) ............................................................................... 3

*WildEarth Guardians v. Salazar*,
  670 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................... 2

**STATUTES**

5 U.S.C. § 701 ................................................................................................................. 1

16 U.S.C. § 1851(a)(7) .................................................................................................... 7

**OTHER AUTHORITIES**

Fed. R. Evid. 701 .......................................................................................................... 12

Fed. R. Evid. 702 .......................................................................................................... 12

## I.  INTRODUCTION

Despite the fact that Plaintiffs clearly filed their lawsuit pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., which governs the scope and standard of review in this case, Plaintiffs attached to their summary judgment reply brief an extra-record declaration signed by Jeffrey Kaelin, ECF 22-1, contending that the Court could consider it for "illustrative purposes." ECF 22 at 15 n.8.  They did not confer with Defendants before they did so, nor had they previously made any complaint about the content of the administrative record.  They did not seek leave of Court.  They did not even attempt to meet their burden of showing that unusual circumstances exist to justify a departure from the general rule that the scope and standard of review in APA cases are confined to the administrative record.  Accordingly, Defendants filed a motion to exclude the extra-record declaration because Plaintiffs' course of action was procedurally and substantively improper.  ECF 24.

In their opposition memorandum, Plaintiffs persist in their assertion that the Court may consider Mr. Kaelin's declaration "for illustrative purposes" or, in the alternative, pursuant to "recognized exceptions to the relevant record review rules." ECF 25 at 2 (Plaintiffs' Memorandum in Opposition to Defendants' Motion to Exclude the Declaration of Jeffrey Howard Kaelin) ("Pl. Mem."). In doing so, Plaintiffs veer between arguing that the information contained in Mr. Kaelin's declaration is elsewhere in the administrative record, while then arguing that the declaration provides information that is absent from the administrative record.  These positions are irreconcilable, and they cannot cure the fundamental impropriety of Plaintiffs' conduct either alone, or in combination.  There is no "illustrative purposes" exception to the record review rules. Plaintiffs further have failed to meet their burden of showing that this is an exceptional

1

circumstance to which one of the exceptions to the record review rule should apply. The Court should grant Defendants' motion.

## II.     ARGUMENT

### A.     Plaintiffs Did Not Follow Proper Procedures In Presenting Mr. Kaelin's Declaration With Their Merits Briefing.

In contending that they followed the proper procedures by attaching Mr. Kaelin's declaration to their summary judgment reply brief, Plaintiffs show disdain for the applicable procedural rules and the legal standard of review that apply to this case. *E.g.*, Pl. Mem. 13 (claiming that courts admit declarations as extra-record evidence "without observance of the procedural niceties cited by Defendants"). Plaintiffs cannot seriously deny, however, that there are clear and established legal principles governing review of agency action under the APA. A court should generally consider neither more nor less than what was before the agency at the time it made its decision. *The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009). Plaintiffs acknowledged this standard of review in their opening summary judgment brief. ECF 18 at 11-12 (Pls. Summ. J. Mem.). A party may seek to supplement the record with "extra-judicial evidence that was not initially before the agency but [which] the party believes should nonetheless be included in the administrative record." *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009). Supplementation, however, is the exception, not the rule. *Id*. Absent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity that it properly designated the administrative record.[1] *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006).

---

[1]  Here, it is uncontested that Plaintiffs did not seek to supplement the administrative record prior to filing their motion for summary judgment. Nor did Plaintiffs seek to supplement the administrative record when they filed their motion for summary judgment. Instead, they simply attached a declaration to their summary judgment reply brief without establishing, by motion or otherwise, why supplementation is warranted. They now seek to cure that defect in their

2

In this Circuit, courts do not allow parties to supplement the record "unless they can demonstrate unusual circumstances justifying a departure from this general rule." *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.,* 940 F.2d 685, 698 (D.C. Cir. 1991); *accord Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008). These circumstances include: "(1) if the agency 'deliberative or negligently excluded documents that may have been adverse to its decision,' (2) if background information was needed 'to determine whether the agency considered all the relevant factors,' or (3) if the 'agency failed to explain administrative action so as to frustrate judicial review.'" *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (quoting *Am. Wildlands*, 530 F.3d at 1002)).

The party seeking to supplement the administrative record must "demonstrate unusual circumstances," *Tex. Rural Legal Aid,* 940 F.2d at 698, which means that party bears the burden of overcoming the presumption of regularity and presenting the Court with its arguments about why one of the exceptions applies. Here, Plaintiffs made no such showing at the outset. Instead, they attached Mr. Kaelin's declaration to their summary judgment reply brief (their final merits brief), side-stepping their obligation and stating in conclusory fashion that the Court could consider it for "illustrative purposes." ECF 22 at 15 n.8. This is inappropriate and inconsistent with established case law demonstrating that the party advocating for the extra record evidence must present clear evidence of exceptional circumstances. For this procedural failure alone, the Court should decline to consider Mr. Kaelin's declaration.

### B.    None Of The Exceptions To The Rule Against Extra-Record Evidence Apply.

Plaintiffs make the belated claim that, notwithstanding their procedurally improper approach, the Court may consider Mr. Kaelin's declaration because it falls within one or more of

---

opposition to the Defendants' motion to strike but, as set forth herein, fail to do so under the correct legal standard.

3

the exceptions to the rule against extra-record evidence. Pl. Mem. 5-9. There is no merit to Plaintiffs' argument.

At the outset, there appears to be no dispute between the parties that neither the factual information contained in Mr. Kaelin's declaration about the costs his company incurred in installing vessel monitoring system ("VMS") units, nor his opinion testimony about the economic feasibility of retrofitting his company's vessels for other fisheries, were before the New England Fishery Management Council ("Council") or the National Marine Fisheries Service ("NMFS") during consideration of the Omnibus Amendment and its implementing regulations.[2] Yet even though Plaintiffs characterize Mr. Kaelin as "indirectly involved in the development of the Omnibus Amendment as part of the [Council's] Observer Policy Committee" and as an "Advisor to the Council's Herring Oversight Committee," Pl. Mem. 7, they offer no explanation for why they failed to bring the specific information in the declaration to the attention of the Council and NMFS during the years-long decisionmaking process.

The documents attached to Mr. Kaelin's declaration suggest that his employer's vessels' capacity and overall design was the same in November and December 2018 while the comment period was open on the Omnibus Amendment and the proposed rule, as it is today. ECF 22-1 at Exs. 4-7. The administrative record shows that the Council and Defendants were aware of the different types of vessels participating in the herring fishery and took those differences into account in their analysis of the economic impact of the industry-funded monitoring ("IFM")

---

[2]  As to the information about the costs his company incurred in installing VMS units, Mr. Kaelin's declaration shows that the costs were not incurred until early 2020, well after the comment periods closed on the Omnibus Amendment and proposed regulations. *See* ECF 22-1 at Exs. 1-3. Indeed, several of the invoices bear dates after the Federal Register notice announcing the final rule was published on February 7, 2020. *See* ECF 22-1 at Exs. 2 & 3. Plaintiffs have not shown why consideration of these post-decision costs is necessary or appropriate.

4

amendment.  *See* AR17735-37.  Thus, if Plaintiffs wanted the Council and Defendants to consider additional facts specific to their vessels, they should have brought these facts to their attention at that time, rather than present them to this Court years later.  Their failure to do so was not for lack of opportunity:  Lund's Fisheries submitted a comment on the notice of availability of the Omnibus Amendment.  AR17683-84 (attached hereto as Exhibit 1).  That comment specifically states that the IFM amendment "has the potential to add an impossible financial burden" on herring vessels that otherwise survive the catch reductions.  AR17683.  Thus, the economic impact of the proposed regulation was also a known issue – both to Mr. Kaelin's company and to others.  *E.g.*, Pl. Mem. 12-13 (listing other comments that objected to the costs associated with the Omnibus Amendment). And, in fact, their concerns were presented to the Council and the agency and are included in the administrative record.  Thus, while Plaintiffs claim that Mr. Kaelin's declaration provides the Court with information that they describe as "helpful," Pl. Mem. 12, it provides no more insight on the issues before the Court than has been provided already by Lund's Fisheries and others.  But, even if the information was "helpful," it is evident that Plaintiffs are offering it to the Court for an improper purpose: to urge the Court to second-guess the reasonable decisionmaking of the Council and the agency through the consideration of extra-record evidence.  Under any construction of the APA, this is improper.

Plaintiffs argue that the Court should consider Mr. Kaelin's declaration because they have asserted that the decisionmaking in this case was subject to "procedural irregularities." Pl. Mem. 7.  This meritless assertion does not constitute evidence of bad faith or improper behavior sufficient to justify consideration of Mr. Kaelin's declaration.  Indeed, Plaintiffs offer no explanation for how the declaration is relevant to their allegations of "procedural irregularities."  While Plaintiffs argued in their merits briefs that NMFS prejudged the legality of industry-funded monitoring,

5

Defendants have refuted those claims by showing that they followed the procedures set forth in the Magnuson-Stevens Fishery Conservation and Management Act ("MSA") and that there were no "procedural irregularities." ECF 20-1 at 27-29; ECF 26 at 19-21. Even Plaintiffs acknowledged in their summary judgment reply brief that Defendants followed the timeframes set out in the MSA. ECF 22 at 36. Their argument has no legal foundation whatsoever and cannot serve as the basis for admitting extra record evidence. In short, the fact is that Defendants followed the law; there is no evidence of bad faith.[3]

As noted above, a party must demonstrate that exceptional circumstances exist before departing from the general rule against extra-record evidence. *Dania Beach*, 628 F.3d at 590. Here, Plaintiffs make no effort to argue that Defendants deliberately or negligently excluded documents that may have been adverse to their decision, or that supplementation is necessary because the agency failed to explain its action so as to frustrate judicial review. *See id*. Rather, Plaintiffs attempt to cram Mr. Kaelin's declaration into the exception for extra-record evidence that provides background information. Pl. Mem. 1, 7. It plainly is not. This is not a situation where, for example, "a scientist challenges the manner in which an agency has relied upon her own research, [such that] her unique familiarity with the meaning of that research can constitute 'particularly relevant' background information about the basis for the agency's decision." *Oceana v. Locke*, 674 F. Supp. 2d 39, 47 (D.D.C. 2009). Despite their claims to the contrary, Plaintiffs relied on Mr. Kaelin's declaration in their summary judgment reply brief to buttress their claims that the IFM costs are too high by specifically comparing the costs of outfitting their vessels with

---

[3] Plaintiffs also state that they "raise[d] claims under [the National Environmental Policy Act] and Regulatory Flexibility Act." Pl. Mem. 7. While it is unclear if that statement is meant to suggest that the presence of those claims in this lawsuit means that the Court should consider extra-record evidence, those claims also are governed by the scope and standard of review set forth in the APA, and Plaintiffs have not taken a position to the contrary.

6

VMS units to the per-day costs associated with IFM. ECF 22 at 14-15.[4] As Plaintiffs state, outfitting their vessels with VMS units costs "less money than would be required to carry an at-sea monitor for only *two* sea days." ECF 22 at 15. Plaintiffs then characterize VMS as among "reasonable compliance requirements," while stating that the IFM requirement is different because of the "*cost* to the regulated industry." *Id*. at 14. Plaintiffs also contend that Mr. Kaelin's declaration makes a distinction between "reasonable compliance costs, as a legal category." Pl. Mem. 5. But this too is unsupported: there is no statutory provision providing a "legal category" of costs. The MSA states that conservation and management measures shall, where practicable, minimize costs and unnecessary duplication. 16 U.S.C. § 1851(a)(7). The statute makes no reference to costs by "category," legal or otherwise. *Cf*. Pl. Mem. 5. The line-drawing that Plaintiffs propose between "costs of regulatory compliance" and being forced "to fund an agency's program," Pl. Mem. 6, is at the very heart of their arguments on the merits. Thus, Mr. Kaelin's declaration is well outside the bounds of the "background information" exception.[5]

---

[4] Defendants do not dispute that the costs associated with VMS are lower than the costs associated with the Omnibus Amendment's IFM requirement. In fact, there is a fundamental difference between the two requirements. VMS units provide positional data. The IFM requirement, by contrast, represents a reporting requirement in furtherance of conservation and management of the fishery through which at-sea monitors conduct sampling activities. VMS units are not designed for this purpose and the comparison between the costs associated with these two requirements is simply apples and oranges.

[5] Plaintiffs also contend that Mr. Kaelin's declaration is exactly the sort of "background information contemplated by *Dania Beach*." Pl. Mem. 7. This explanation makes no sense: the *Dania Beach* court rejected the plaintiffs' attempt to jam the administrative record full of documents that failed to meet any of the exceptions. 628 F.3d at 590-91. It did not admit evidence under that exception to the record review rule. *See id*.

### C. Plaintiffs Concede That VMS Costs Are Already Part Of The Administrative Record.

Plaintiffs concede that VMS costs already were considered in the course of the decisionmaking related to the Omnibus Amendment's IFM requirement. Pl. Mem. 10. This concession alone demonstrates that the Court need not consider Mr. Kaelin's declaration.

In acknowledging that the VMS costs were considered, Plaintiffs point to a survey discussed in the Environmental Assessment which collected information regarding costs from vessels participating in the Atlantic herring fishery in 2014. *Id.*; *see* AR17247, 17625-37. According to Plaintiffs, one cost category identified in the survey encompassed VMS, although more broadly than the costs listed in Mr. Kaelin's declaration. Pl. Mem. 10-11. Remarkably, despite their prior assertion that VMS costs <u>were</u> considered, Plaintiffs then claim that information regarding "VMS and other communication costs" is "absent from the record," Pl. Mem. 11, as if to suggest that Mr. Kaelin's declaration should be considered for this reason. This position is irreconcilable with their prior admission and, as explained further, unsupported by the facts.

The survey referenced by Plaintiffs was included in the administrative record as Appendix 3 to an April 2016 IFM Amendment Discussion Document and Appendices. AR10728-921.[6] Among the costs that participants were requested to provide were "Wheelhouse and Electronics (such as Radar, GPS, <u>VMS</u>, sounder, radio, depth/temperature/net sensors)[.]" AR10833 (emphasis added). The cost information gathered from the survey then was analyzed in a separate appendix to the April 2016 IFM Amendment Discussion Document. *See* AR10844-73 (Appendix

---

[6] Appendix 3 is located at Bates numbers AR10829-43. The complete document is attached hereto as Exhibit 2. The survey also appears elsewhere throughout the administrative record. *E.g.*, AR3594-3608; AR4936-52 (attached to Observer Policy Committee meeting materials); AR9572-86 (attached to discussion document for Herring Advisory Panel and Herring Oversight Committee meetings).

4 – Atlantic Herring Alternative Economic Impacts on Herring Fishing Businesses). As that appendix explained, the survey data was "used to update the impact analyses" and if a vessel owner completed a survey, "that vessel's actual costs were used in the analysis." AR10845. This analysis was later included as part of Appendix 5 to the Environmental Assessment. AR17442-474. In short, the administrative record plainly demonstrates that: (1) VMS costs were considered by the Council in its development of the Omnibus Amendment and, therefore, considered by Defendants; (2) the information was used to analyze costs; and (3) detailed analyses of costs, including the cost of VMS, was included in the administrative record. The fact that the individual survey results were not included in the administrative record is hardly a reason to attack the presumption of validity afforded to the administrative record as a matter of law. *Pac. Shores Subdivision*, 448 F. Supp. 2d at 4. "Generally, an administrative record need not be supplemented with underlying source documents where a document in the record provides detailed findings." *Level the Playing Field v. Federal Election Comm'n*, 381 F. Supp. 3d 78, 94 (D.D.C. 2019); *see also Dist. Hosp. Partners v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) (finding supplementation unnecessary because source data did not constitute critical background information).[7] Plaintiffs' admission that the VMS cost information already is included in the administrative record and their characterization of the declaration as offered primarily for illustrative purposes supports the presumed validity of the administrative record.

Finally, in an eleventh-hour attack on the administrative record, Plaintiffs now contend, for the first time, that the Court should "consider the cost survey" and "order Defendants to complete

---

[7] Defendants further note that the cover letter that accompanied the survey states that the information provided by vessels would be kept confidential. AR10829.

9

the [administrative] record with the data compiled by Mr. Didden."[8]  Pl. Mem. 11.  As outlined above, the survey information is already reflected in detailed analyses in the administrative record.  For Plaintiffs now to demand that the Court order Defendants to include the survey data in the administrative record is improper.  The parties have concluded merits briefing.  Plaintiffs do not raise any question regarding the survey results or the EA analysis that they posed to the Council during development of the Omnibus Amendment, or to NMFS during the comment periods on the notice of availability of the Omnibus Amendment or the proposed and final rule.  Plaintiffs never raised any issues regarding the content of the administrative record to Defendants, never filed a motion regarding the content of the administrative record, and certainly never conferred with counsel for Defendants in advance of their belated request.  The Court should reject this argument in its entirety.

### D. Plaintiffs' Brief Undeniably Cites And Relies On Mr. Kaelin's Declaration.

Plaintiffs improperly attached an extra-record declaration to one of their merits briefs.  They did so without conferring with Defendants first, and without seeking leave of Court for consideration of extra-record evidence in this APA case.  As explained above, the declaration does not fall within any of the exceptions to the record review rule and should not be considered by the Court.  In light of these facts, the Court also should exclude any portion of Plaintiffs' brief that relies on Mr. Kaelin's declaration.

Plaintiffs contend that they "do not base their arguments solely on the Kaelin Declaration and repeatedly cite the administrative record."  Pl. Mem. 11-12.  While that may be true of the majority of the pages in their summary judgment reply brief, text on pages 15 (paragraph 2), 16

---

[8]  Jason Didden collected the survey data from vessel owners for the "Herring and Mackerel Vessel Annual Cost Survey" that is included in the administrative record.  AR17623-25.

10

(paragraph 3), and 34 (paragraph 2) unambiguously cites and relies on the declaration. Moreover, with the exception of the sentence on page 34, the sentences in these paragraphs cite and rely only on Mr. Kaelin's declaration and no other documents from the administrative record. Accordingly, they should be excluded from the Court's consideration. While Plaintiffs characterize Defendants' request as one seeking to "carve up Plaintiffs' brief," Pl. Mem. 12, Defendants' request is reasonable and an appropriate remedy for Plaintiffs' improper attempt to put Mr. Kaelin's declaration before the Court in the first place.

### E.   Mr. Kaelin's Declaration Improperly Opines On Economic Feasibility.

Mr. Kaelin's declaration offers an improper opinion on whether it would be "economically feasible" to operate Lund's Fisheries' vessels in a way to qualify for the 50 metric ton ("mt") waiver available to vessels that intend to land less than 50 mt of herring. ECF 22-1 at ¶ 17. He further opines that it "would not be economically feasible to refit these vessels for regular prosecution of non-pelagic fish species in lieu of participating in the Atlantic herring fishery." *Id*. at ¶ 18. These statements are not facts. They are incomplete, conclusory and unsupported opinions, untethered from any facts and data considered by Mr. Kaelin in forming them, that add nothing to the administrative record that informed the decisionmakers when approving the Omnibus Amendment.

Plaintiffs contend that Mr. Kaelin is not an "expert" and does not seek to offer expert testimony. Pl. Mem. 13. A plain reading of Mr. Kaelin's declaration shows otherwise. Mr. Kaelin does not simply recite background facts derived from the business records of Lund's Fisheries, as Plaintiffs contend. *See* Pl. Mem. 13. Instead, the declarant also relies on his knowledge, information provided to him, and his experience "reviewing and analyzing relevant [business] records" to offer an opinion that "it would not be economically feasible" to operate the identified

vessels so as to qualify for the 50 mt exemption contained in the herring measures, or to "refit" those vessels for "regular prosecution" of other fish species. ECF 22-1 ¶¶ 2, 17-18. Although that conclusory opinion is not supported by any economic analysis,[9] an opinion about the economic feasibility of two alternative hypothetical vessel operation scenarios falls squarely within the realm of expert testimony as defined by Fed. R. Evid. 702. *See Arizona v. California*, 460 U.S. 605, 641 n.31 (1983) (referencing expert testimony submitted regarding the economic feasibility of farming on sandy soil); *see also* Fed. R. Evid. 701, Advisory Committee Notes, 2000 Amendments (amendments to Rule 701 "makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 . . .").

Moreover, the cases on which Plaintiffs rely present circumstances that are not present here. In *Oceana v. Evans*, 384 F. Supp. 2d 203 (D.D.C. 2005), the Court admitted expert testimony contained in a letter from a sea turtle expert that was sent to the agency four months after a biological opinion was issued. The Court allowed it because the expert critiqued a model that the agency relied on, and the expert was one of the modeler's original developers, which the Court found to be highly relevant. *Id*. at 217 n.17. In addition, the Court found that the delay in the submission of the letter was understandable because there was no public comment period on the biological opinion. *Id*. Here, of course, there were <u>two</u> public comment periods and Mr. Kaelin's company participated in one of them. *See supra*.

---

[9] Mr. Kaelin's opinion on his company's ability to alter its vessels is silent on other potential cost mitigation measures in the Omnibus Amendment, such as SBRM coverage or the potential use of an exempted fishing permit. Both measures may be a more cost-effective way for vessels to meet the 50% coverage target requirement than at-sea monitoring coverage. AR17738, 17742.

The Court's decision in *Oceana v. Pritzker*, 126 F. Supp. 3d 110 (D.D.C. 2015) is similarly unhelpful to Plaintiffs. There, the Court observed that "the rarity with which consideration of extra-record evidence occurs stems in part from the fact that challengers such as Oceana typically have the opportunity to submit such evidence in conjunction with comment on proposed agency action." *Id*. at 113. Finding there was no such opportunity here (with respect to a supplemental administrative record and revised incidental take statement), the Court allowed the expert declaration (and then allowed the agency to file its own expert declaration). *Id*. *Oceana v. Pritzker* is not on point with the facts before this Court. Therefore, the Court should pay no heed to Plaintiffs' claims that Mr. Kaelin's declaration presents only fact testimony, or that case law permits this Court's consideration of this extra-record declaration.

## III.   CONCLUSION

For these reasons, the Court should grant Defendants' motion and exclude Mr. Kaelin's declaration from its consideration of the merits in this case, as well as any portion of Plaintiffs' Reply that relies on it, including the text at pages 15 (paragraph 2), 16 (paragraph 2), and 34 (paragraph 2).

Dated: September 10, 2020

Respectfully submitted,

JEAN E. WILLIAMS,
Deputy Assistant Attorney General
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief

/s/ Alison C. Finnegan
Alison C. Finnegan, Senior Trial Attorney
(Pennsylvania Bar No. 88519)
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611

13

Tel: (202) 305-0500; Fax: (202) 305-0275
alison.c.finnegan@usdoj.gov

/s/ Kristine S. Tardiff
Kristine S. Tardiff
(New Hampshire Bar No. 10058)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
53 Pleasant Street, 4th Floor
Concord, NH 03301
Tel: (603) 230-2583; Fax: (603) 225-1577
kristine.tardiff@usdoj.gov

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/ Alison C. Finnegan