IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOPER BRIGHT ENTERPRISES, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No. 20-0466 (EGS) |
| ) | |
| WYNN COGGINS, in her official capacity as ) | |
| Acting Secretary of the Department of Commerce, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs Loper Bright Enterprises, Inc., H&L Axelsson, Inc., Scombrus One LLC, and Lund Marr Trawlers LLC (collectively, "Plaintiffs") respectfully submit this notice of supplemental authority related to the pending cross-motions for summary judgment. *See* ECF Nos. 18 & 20. The parties completed briefing the cross-motions in this expedited case on September 9, 2020. Plaintiffs filed the Joint Appendix on September 16, 2020.

Among other things, the parties here dispute whether the New England Industry-Funded Monitoring Omnibus Amendment ("Omnibus Amendment") is consistent with the Magnuson-Stevens Act's ("MSA") "National Standards." Plaintiffs contend that the Omnibus Amendment violates National Standards Seven and Eight[1] because it will have severe economic impacts—impacts that are not outweighed by any demonstrated scientific or conservation benefit. *See* Pls.' Mem. of P. & A. in Supp. of their Mot. for Summ. J. at 29, ECF No. 18-1 [hereinafter "Pls.'

---

[1] National Standard Seven directs that fishery regulations "shall, where practicable, minimize costs and avoid unnecessary duplication." 16 U.S.C. § 1851(a)(7); *cf.* 50 C.F.R. § 600.340. National Standard Eight requires regulators to consider "the importance of fishery resources to fishing communities," "provide for the sustained participation of such communities," and," to the extent practicable, minimize adverse economic impacts on such communities." 16 U.S.C. § 1851(a)(8); *cf.* 50 C.F.R. § 600.345.

Mem."] ("At no point did Defendants justify the Omnibus Amendment by describing less costly alternatives that the NEFMC seriously considered. By omitting such discussion from the final rule, Defendants implicitly admitted that the NEFMC's preferred alternatives—and the imposition of industry funding—were the sole solutions seriously considered. That is not good enough."); *see also* Pls.' Reply Br. at 22–27, ECF No. 22.

As reflected in the attached exhibit, another judge in this District recently decided a National Standard Seven case, *Burke v. Coggins*, No. 20-0667 (D.D.C. Feb. 18, 2021). In *Coggins*, several fishermen in the West Coast drift gill net swordfish fishery sued the federal government after it finalized a "hard caps" rule that would have "immediately close[d] the . . . swordfish fishery . . . if the mortality or injury for some marine mammals and turtles meets or exceeds . . . [a certain limit] over a rolling two-year period[.]" Slip op. at 4. The government initially found the rule to be consistent with the MSA, but following public comment, it reversed course and opposed finalization. The government only promulgated the rule to comply with a court order in another suit brought by an environmental organization. *See id.* at 5. Because of the unique posture of *Coggins* and the government's agreement with the fishermen-plaintiffs, the same environmental group intervened to defend the rule. Judge McFadden entered judgment for the plaintiffs and vacated the "hard caps" rule because it violated National Standard Seven.

Although the facts pertaining to the type of fishery management action at issue in *Coggins* are distinguishable from the present dispute, Judge McFadden's well-reasoned opinion is still relevant.

*First*, Judge McFadden emphasized that "[i]f the notice-and-comment process is to be more than an exercise in futility, federal agencies should be willing to reconsider their positions after receiving comments from the public," *Coggins*, slip op. at 13, especially when the severity of the

2

economic impact of a proposed rule is the focus of stakeholder feedback. *See* Pls.' Mem. at 6, 8, 39, 42 (discussing the need for revised analysis of the economic impact of the Omnibus Amendment following feedback from fishery participants and given significant quota cuts).

*Second*, Judge McFadden rejected the proposition that "economic effects cannot outweigh conservation benefits under the [MSA]." *Coggins*, slip op. at 13. On the contrary, he concluded that "[i]t does not follow . . . that *all* conservation measures must be pursued and that any such measure must override *all* economic consequences. . . . That interpretation would require the Service 'to implement virtually any measure . . . so long as it is feasible.'" This approach to the National Standards tends to cut against the position ostensibly advanced by Defendants here. *See, e.g.*, Mem. in Supp. of Defs.' Cross-Mot. for Summ. J. at 26 [hereinafter "Defs.' Mem."], ECF No. 20-1 ("In striking that balance [between conservation and minimizing harm to fishing communities], the law does not require an official or numerical cost/benefit analysis.").

*Third*, Judge McFadden suggested that the government must address preservation of the *status quo*—that is, taking "no action"—as a real option when considering the conformity of any plan amendment or implementing regulation to the MSA. *See Coggins*, slip op. at 15 n.11 (citing 50 C.F.R. § 600.340(c)); *see also* Pls.' Mem. at 37; Pls.' Reply Br. at 24–25 ("Also telling is the lack of any meaningful discussion about the impact—beneficial or otherwise—of maintaining the *status quo*, that is, government-funded monitoring at the coverage levels set by the SBRM.").

*Fourth*, and finally, Judge McFadden expressed suspicion towards the intervenor's suggestion—seemingly shared by Defendants in this case, *see* Defs.' Mem. at 32—that regulated fishermen can avoid the devastating economic impact of a regulation by switching to a different fishery. *See Coggins*, slip op. at 16. Indeed, in *Coggins*, the government had recognized that "'[f]ishermen may incur significant costs when purchasing a permit for a new fishery, especially

if that permit allows participation in a limited entry fishery,'" and "'the cost of purchasing fishing gear for a new fishery may also be significant'" enough to warrant careful consideration of the conformity of a rule to National Standard Seven.  *Id.* (citing administrative record); *see* Pls.' Reply Br. at 16 ("Defendants argue that participation in the herring fishery is 'voluntary' . . . [but] [t]his betrays a complete detachment between regulators and the fishing industry.  Few herring captains could survive with tiny 50-metric-ton landings, let alone simply switch to a different fishery.").

In sum, the foregoing points in *Coggins* provide further support for Plaintiffs' arguments that the Omnibus Amendment violates the MSA.

Dated: February 22, 2021                                  Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
D.C. Bar No. 1024362
Eric R. Bolinder
D.C. Bar No. 1028335

CAUSE OF ACTION INSTITUTE
1310 North Courthouse Road, Suite 700
Arlington, VA 22201
Phone: (571) 444-2841
ryan.mulvey@causeofaction.org
eric.bolinder@causeofaction.org

*Counsel for Plaintiffs*